[Civ. No. 1048.    Third Appellate District.—March 13, 1913.]

MARGARET H. BARKLEY, Executrix of the Will of Edward Duncan, Deceased, et al., Appellants, v. THE HIBERNIA SAVINGS AND LOAN SOCIETY (a Corporation), Respondent.

CANCELLATION OF INSTRUMENTS—LÁCHES IN BRINGING ACTION—AMENDMENT OF COMPLAINT.—In an action to set aside a deed for want of consideration, the court does not abuse its discretion in sustaining a demurrer to the sixth amended complaint and refusing leave to file the seventh, where there has been a delay of nearly three years in bringing the action and no excuse therefor is offered nor fraud alleged.

ID.—PROMPTNESS REQUISITE IN BRINGING ACTION.—The same degree of promptness is necessary in taking steps to have an instrument canceled as in the case of rescission of a contract.

ID.—AMENDMENTS TO COMPLAINT—INCONSISTENCIES—GOOD FAITH.—Inconsistencies in several amended complaints may lead the court to distrust the good faith of the plaintiff, and be regarded as a circumstance in support of the court in disallowing a further amendment.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing leave to file a seventh amended complaint. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

R. P. Henshall, and J. C. Bates, for Appellants.

Tobin & Tobin, and F. S. Brittain, for Respondent.

BURNETT, J.—The appeal is from the judgment in favor of defendant following an order sustaining the demurrer to plaintiffs' *sixth* amended complaint and from an order refusing to allow plaintiffs to file a *seventh* amended complaint. This action is declared by both parties to be a "companion case" to No. 1070, (*Davis* v. *Hibernia Sav. & L. Soc. ante,* p. 444, [132 Pac. 462]), this day decided, and it was brought to vacate and set aside a certain deed of certain property in San Francisco from said George O. Davis to said defendant, ex-

ecuted on the thirty-first day of May, 1905, and, as incidental thereto, for an accounting of certain insurance moneys collected by said defendant in consequence of the destruction by fire of the building situated on said real estate.   It appears that one Edward Duncan conveyed the property to Davis, on January 16, 1902, with instructions in a separate instrument "to sell the property and to place the proceeds of any such sale in the hands of Margaret H. Barkley for the purpose of investing the same for him (said Duncan), should he be alive, and that in the event of his, said Duncan's death, such proceeds be paid to Margaret H. Barkley."   Said deed from Duncan to Davis was recorded by Davis on the ninth day of August, 1902, without the knowledge, so it is averred, of said Duncan. The deed from Davis to respondent, it is alleged, "was wholly without consideration of any kind given or agreed to be given, to said George O. Davis, or to said estate of Edward Duncan, deceased, or to said Margaret H. Barkley, or to her as executrix aforesaid, or to any person for the use or benefit of them or either of them, and that said defendant was not a purchaser for value of said land, or any part thereof, and that when said deed was so made as aforesaid defendant had full knowledge of the matters hereinabove alleged."

The demurrer was both general and special and it is quite apparent that, in several particulars therein specified, the complaint was defective.

Davis was improperly joined as a party plaintiff, no cause of action being stated in his behalf, and any interest on his part in the subject of the litigation being expressly disavowed. It is doubtful, however, whether this point was reached by the demurrer.

There is a serious omission in the failure to allege that Duncan was the owner of the property or had any interest therein at the time he executed said deed to Davis and created said trust.   It appears that he owned the property on the twentieth day of April, 1898, but we are left to surmise as to whether he still owned it on the sixteenth day of January, 1902.   This and some other specifications of error may be regarded, though, as somewhat technical, but a vital circumstance remains to be considered.

Appellant claims that this action is brought under section 3412 of the Civil Code and is authorized thereby.   Said sec-

tion provides that "a written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

It may be conceded that appellants have brought themselves within the terms of this section, but the court below was justified in sustaining the demurrer on the ground of their laches. The deed from Davis to respondent, as we have seen, was executed May 31, 1905, and the original complaint in this action was filed May 13, 1908, nearly three years thereafter. There is not even an excuse offered for the delay nor is there any allegation of fraud upon the part of respondent.

As to the degree of promptness with which, under the circumstances, steps must be taken to have the instrument canceled, the rule in this state is the same as in the case of rescission of contracts.

*Burkle* v. *Levy,* 70 Cal. 250, [11 Pac. 643], involved an action to set aside a deed of trust executed by the plaintiffs to the defendant as trustee. The supreme court, after referring to sections 1689 and 1691 of the Civil Code, in reference to rescission, said: "Here, as has been seen, the trust deed was executed on the 23d day of May, 1884, and this action was not commenced until the tenth day of October, 1885. There is nothing in the complaint to account for this long delay, and, under the circumstances, we must hold it unreasonable and fatal to this action."

In *Bailey* v. *Fox,* 78 Cal. 389, [20 Pac. 868], where the action was to rescind a partnership contract, it was held that a delay of four months after the discovery of the fraud was fatal to a claim of right to rescind.

The authorities, it may be said, are not altogether uniform in the application of the doctrine of laches. This is not surprising, however, in view of the element of discretion that is therein involved, and of the peculiar facts of the various cases. Professor Pomeroy treats the subject in his article on Cancellation of Instruments, 6 Cyc., p. 300, wherein many citations are made illustrating the different views of different jurisdictions. He says therein that no attempt is made "to reconcile the various judicial utterances on the subject of laches."

It may be remarked also that in considering the question the distinction between an action to recover possession of real property or to quiet title thereto and an action to cancel the instrument which may be used as evidence of that title, should not be ignored. The importance of this consideration is emphasized in *Castro* v. *Barry,* 79 Cal. 443, [21 Pac. 946.]

It is likewise true that in this state for instances of fraud the legislature has fixed a time within which the action must be brought. In those particular cases this would seem to be the general measure to determine whether the injured party is properly chargeable with laches. This circumstance has been apparently overlooked in some of the decisions.

We need not pursue the subject further, though, as in the case at bar no fact is declared that would render unjust or inequitable the application of the rule requiring promptness in the assertion of such a claim, and it may be said that appellants have made no reply to respondent's brief and have not seen fit to offer to the court any suggestions as to this point.

When we remember that appellants, through the assistance of able counsel, had made seven futile attempts to correctly set forth a cause of action and in so doing their efforts had covered a period of a little more than two years, it is not surprising that the court concluded that the limit of indulgence had been reached. At any rate, it could not justly be said that there was any abuse of discretion in refusing permission to file another amended complaint.

There are several objections also to the proposed amended pleading that would justify the court's action.

Of these, one circumstance discrediting the good faith of the pleader we proceed to notice substantially as pointed out by respondent.

In the original complaint in this action, it is alleged that, on January 16, 1902, Edward Duncan conveyed the land in controversy to George O. Davis, ''in trust for certain purposes,'' without specifying those purposes, and that the deed was recorded on August 9, 1902, and that, by promises to allow him to have an expert examine the cash book of the bank and by threats of violence and without any consideration, Davis was induced to execute the deed of the premises to respondent.

In the first amended complaint it was alleged that the deed from Duncan to Davis was ''in trust for the sole use and benefit of Margaret H. Barkley.''

In certain subsequent amended complaints the words ''in trust'' were omitted. From these earlier complaints, although not expressly alleged, the rational inference would be that the terms of the trust were declared on the face of the deed from Duncan to Davis.

In the sixth amended complaint, for the first time, it is alleged that: ''Together with said deed so delivered to said George O. Davis, said Edward Duncan did deliver to said Davis, a writing, signed by said Edward Duncan and addressed to said George O. Davis, instructing said Davis to sell the property . . . and to place the proceeds of any such sale in the hands of Margaret H. Barkley for the purpose of investing the same for him (said Duncan) should he be living, and that in the event of his, said Duncan's death, such proceeds to be paid to Margaret H. Barkley.''

Of course, as suggested by respondent, if the written instructions were given to Davis in 1902, both he and Mrs. Barkley knew, at the time the first amended complaint was filed, that the conveyance from Duncan was not ''in trust for the sole use and benefit of Margaret H. Barkley,'' and if the latter statement was true, then it follows that the conveyance was not made to Davis upon ''an express trust to sell the property and to place the proceeds of the sale in the hands of Mrs. Barkley for the purpose of investing the same for Duncan, should he be living, and only to be paid to Mrs. Barkley individually in the event of his death.''

In the proposed seventh amended complaint we have an entirely different account of the transaction. Therein it is alleged that Davis was Duncan's general attorney in fact and that, ''in the latter part of the year 1901 . . . Davis had negotiated a sale of the property; . . . that the prospective purchaser . . . objected to a conveyance by power of attorney, and for the sole purpose of consummating said sale, and not otherwise, the said George O. Davis requested the said Duncan to make and deliver to him a grant, bargain, and sale-deed of such property; that thereafter, on the sixteenth day of January, 1902, and for the sole purpose of consummating said sale, said Edward Duncan did deliver to said George O.

Davis, a deed of said property.'' It is true that the foregoing is followed by the allegation that said deed was accompanied by written instructions to consummate the sale, if possible, and to place the proceeds in the hands of Mrs. Barkley for the purpose of reinvesting the same for Duncan, should he be alive, but in the event of his death to be paid to Mrs. Barkley without condition and "that in the event that said sale should not be consummated, then the said Davis should hold the said property, in trust for the said Margaret H. Barkley.'' The effect of the averment as to "the sole purpose" of the deed is not, however, ameliorated.

These inconsistencies and others not necessary to detail might well lead the trial court to distrust the good faith of plaintiffs and this must be regarded as an additional circumstance in support of the position that there was no abuse of discretion in disallowing the seventh amendment.

In conclusion, we may remark that if the views expressed in the opinion filed in the "companion case" are sound, then, of course, the deed from Davis to respondent is of no consequence, since title was acquired by the bank in the foreclosure proceedings.

We think the judgment and order should be affirmed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 12, 1913, and the following opinion then rendered thereon:

THE COURT.—The petition for a rehearing in this case, after judgment of the district court of appeal, is denied. We make this order because of the fact that by reason of the denial this day made of a similar petition for a rehearing in case No. S. F. 5938, entitled Davis v. Hibernia Savings and Loan Society, ante, p. 444, [132 Pac. 462], the matters involved in this case have been, in effect, adjudicated and this case has now become a moot case. We express no opinion concerning the propositions of law stated in the opinion of the district court of appeal in this case.